Larry CRAIG, Appellant,

v.

KENTUCKY STATE BOARD FOR ELEMENTARY AND SECONDARY EDUCATION; Thomas E. Gish; Helen W. Mountjoy; Wade Mountz; Samuel Robinson; Gary L. Stewart; Gary Cox and Joseph W. Kelly, In Their Official Capacities as Members of the Kentucky State Board of Education; and Dr. Thomas C. Boysen, In His Official Capacity as Chief State School Officer of the Kentucky Department of Education, Appellees.

No. 94–CA–0965–MR.

Court of Appeals of Kentucky.

May 5, 1995.

Case Ordered Published by
Court of Appeals June 30, 1995.

David M. Cross, Albany, for appellant.

Kevin M. Noland, Frankfort, for appellees Kentucky State Board for Elementary and Secondary Education, Thomas E. Gish, Helen W. Mountjoy, Wade Mountz, Samuel Robinson, Gary L. Stewart, Gary Cox and Joseph W. Kelly.

Stephen D. Wolnitzek, Smith, Wolnitzek, Schachter & Rowekamp, Covington, for appellee Dr. Thomas C. Boysen.

Before DYCHE, GUDGEL and JOHNSTONE, JJ.

JOHNSTONE, Judge.

Larry Craig appeals from a Clinton Circuit Court order affirming a decision of the Kentucky State Board for Elementary and Secondary Education, which found Craig guilty of misconduct in office and removed him as a member of the Clinton County Board of Education. We affirm.

Craig was elected to the county school board in November of 1990 and took office in January 1991. On May 17, 1993, the Chief State School Officer, Thomas Boysen, brought charges seeking Craig's removal for misconduct in office, pursuant to KRS 156.132. The charges alleged that Craig had attempted to influence the hiring or appointment of nine school district employees, in violation of KRS 160.170 and KRS 160.180(3).

On August 23, 1993, the state board held a hearing on the charges and found Craig guilty of attempting to influence the hiring of the nine employees. The board also found that Craig had demonstrated a pattern and practice of attempting to influence the hiring of employees which constituted misconduct in office and established good and sufficient cause for Craig's removal from office. The board then directed Craig be immediately removed from his position.

On September 22, 1993, Craig appealed his removal to the Clinton Circuit Court. He also moved the circuit court for a temporary injunction on October 22, 1993, to enjoin Boysen from filling Craig's seat and to reseat Craig pending the outcome of his appeal. The court ordered that Craig's seat not be filled, pending outcome of the appeal, but denied Craig's motion for injunction on the basis of our Supreme Court's ruling in *State Board for Elementary Education v. Ball*, Ky., 847 S.W.2d 743 (1993).

On February 18, 1994, the Clinton Circuit Court entered its "Findings of Fact, Conclusions of Law and Order" affirming the decision of the state board finding Craig guilty of misconduct in office and removing him from the Clinton County Board of Education. Craig now raises five issues on appeal to this Court.

Craig initially argues that the state board did not timely hold the August 23, 1993 hearing, in violation of KRS 156.132. Apparently, the board could not hold the meeting on the originally scheduled June 24, 1993 date because of lack of a quorum. Craig contends that the board arbitrarily continued the hearing without his consent or waiver, instead of dismissing the charges and refiling them at a later date. He states that this was "not equitable, not appropriate."

The pertinent section of KRS 156.132 provides in part:

(5) As an alternative to first seeking suspension, the chief state school officer may recommend by written charges the removal by the State Board for Elementary and Secondary Education of any district board member, superintendent of schools, or other public school officer whom he has reason to believe is guilty of ... *misconduct in office....* The officer against whom the written charges are issued by the chief state school officer shall be furnished with the written charges and notice of the date and place at which the officer may appear before the state board to answer the charges. *The date shall be not less than thirty (30) nor more than forty (40) days after the service of the charges upon the officer.*

KRS 156.132(5) (emphasis added).

While Craig correctly asserts that the state board failed to comply with the time

restrictions contained in the statute, Boysen and the board respond that Craig suffered no harm in this instance. Boysen did not suspend Craig prior to the hearing date; Craig continued to serve as a functioning member of the Clinton school board until his removal on August 24, 1993, the day *after* the hearing.

■ The burden rests with the party alleging error to show the resulting prejudice. *Kentucky Lake Vacation Land v. State Property and Buildings Com'n,* Ky., 333 S.W.2d 779 (1960). As the circuit court stated, Craig has failed to articulate the prejudice suffered. We will not speculate as to his intended argument. *See also Brown v. Fulton, Hubbard & Hubbard,* Ky.App., 817 S.W.2d 899 (1991). Consequently, we affirm the trial court on this issue.

■ Craig next asserts that the state board failed to comply with KRS 156.132(3), which "require[s the board] to set forth a finding that notification to the local board was futile before it in fact proceeded against Craig." Craig argues that the local board, while not empowered to remove him from office, could have taken a less harsh disciplinary tactic against him.

KRS 156.132(3) provides:

The State Board for Elementary and Secondary Education may suspend a district superintendent of schools or other *public school officer* under subsection (2) of this section or remove him pursuant to subsection (5) of this section only if after thirty (30) days of receipt of the written charges specified in subsection (1) of this section, the proper school authorities having immediate jurisdiction, either the superintendent or the district board of education, has refused to act, has acted in bad faith, arbitrarily, or capriciously, or if a recommendation to the district board would have been futile.

KRS 156.132(3) (emphasis added). Obviously, no requirement exists to "set forth findings" that notification to the local board would be futile. Moreover, KRS 156.132 defines "public school officer" as, "a person who previously served as a superintendent of schools or board member during which time

charges were brought against him under this section." Craig does not meet the definition of a "public school officer" under KRS 156.132; consequently, the requirements of subsection (3) were not applicable in this case.

■ Craig next maintains that his lack of willful or knowing violation of the statutes negates any misconduct in office on his part. Basically, this argument is an elaboration of his fourth argument, that KRS 160.170 and KRS 160.180 are unconstitutionally vague and overbroad. However, as to this argument directly, we note that the circuit court affirmed the state board's finding that Craig stated to the former school superintendent, "I know I'm not supposed to ask you to hire someone," and "It will be your word against mine." Obviously, Craig was well aware that these statutes prohibit the conduct in which he engaged. Craig does not challenge the circuit court's finding in this matter. Moreover, addressing violations of KRS 160.180(2) and (3), the *Ball* Court stated:

The trial judge conceded that the evidence of appellees' misconduct was true and correct; however, he then found the appellees to have been in substantial compliance with the statutes. While substantial compliance may be appropriate in regard to some areas of the law, the test is quite inappropriately applied in this given fact situation. There is no basis for the use of the substantial compliance test. *Either the appellees did or did not violate the statutes; and if they did, they can, and must be removed.*

*Ball,* 847 S.W.2d at 749 (emphasis added). Consequently, we find no merit in this argument.

■ Next, Craig challenges the following language of KRS 160.170 and KRS 160.180(3) as being unconstitutionally vague and overbroad:

*KRS 160.170:*

... [a person elected to a board of education] will not in any way influence the hiring or appointment of district employees....

*KRS 160.180(3):*

... if [a board member] attempts to influence the hiring of any school employee ... he shall be subject to removal from office. ...

Specifically, Craig argues that interpretations of the wording "in any way," "appointment," and "influence" are endless. He asserts he was unaware that the statutory language prohibited conversations "conducted in a joking manner, between friends;" that the wording used is far too vague to determine what conduct is prohibited; that the statutes pose a "chilling effect" to a board member's free speech; and that the statutes were not narrowly tailored to achieve the state interest.

▪ A statute is impermissibly vague when a person disposed to obey the law cannot determine with reasonable certainty what conduct is prohibited. *See Commonwealth v. Foley,* Ky., 798 S.W.2d 947 (1990). *See also State Board for Elementary & Secondary Education v. Howard,* Ky., 834 S.W.2d 657 (1992). The courts will also strike down as vague statutes written in a manner that encourages arbitrary and discriminatory enforcement. *Howard,* 834 S.W.2d at 662.

Craig has presented no legitimate evidence, before this Court or the circuit court, tending to show that KRS 160.170 and 160.180(3) are arbitrary or do not provide fair notice to any reasonable person disposed to obey the law. *C.f. Hendricks v. Commonwealth,* Ky., 865 S.W.2d 332 (1993). The statutes at issue clearly prohibit school board members from engaging in nepotism or favoritism. Their wording, as their meaning, is simple and unequivocal. Furthermore, KRS 160.370 and KRS 160.380 removed from the local board and placed with the superintendent all responsibility for the hiring and dismissal of personnel. Other than the superintendent, per KRS 160.350, the local board has absolutely no place in the hiring process. In the context of this revamped scheme, the statutes' meaning is unmistakable. We also find no possibility of arbitrary or discriminatory enforcement. We affirm the circuit court's holding that the statutes are not vague.

▪ Additionally, a statute is overly broad if, in an effort to control impermissible conduct, the statute also prohibits conduct which is constitutionally permissible. *Howard,* 834 S.W.2d at 662. Where conduct and not merely speech is involved, the overbreadth effect of a statute must not only be real, but substantial as well, and judged in relation to the law's plainly legitimate sweep. *Hendricks,* 865 S.W.2d at 337.

▪ Craig makes the blanket assertions that the statutes have a "chilling effect" on his free speech and that they are not as narrowly drawn as required. Unfortunately, Craig fails to elaborate further on his arguments. Even if we assume that Craig's First Amendment rights have been abridged, we recognize that the First Amendment does not guarantee the right to communicate one's views at all times and places or in any manner that may be desired. *See Commonwealth v. Ashcraft,* Ky.App., 691 S.W.2d 229 (1985) (citing *Heffron v. International Society for Krishna Consciousness,* 452 U.S. 640, 101 S.Ct. 2559, 69 L.Ed.2d 298 (1981)). "Accordingly, reasonable time, place, and manner restrictions have been upheld where they serve a significant governmental interest and contain sufficient standards which leave open alternative channels of communication." *Ashcraft,* 691 S.W.2d at 232.

▪ The Commonwealth has a significant interest in regulating the conduct of school board members to eradicate the fact and appearance of nepotism in the public schools. *See Rose v. Council for Better Education, Inc.,* 790 S.W.2d 186 (1989); *Chapman,* 839 S.W.2d at 242; *Howard,* 834 S.W.2d at 657. The means chosen to accomplish this goal are narrowly drawn. *Chapman,* 839 S.W.2d at 242. Contrary to Craig's argument, these statutes do not prohibit any and all opinions concerning personnel employed in the school district; rather, they prohibit board members from engaging in intentional acts of nepotism or favoritism only. The General Assembly had discretion to determine that a bar against board member-relative relationships was necessary to ensure maintenance of an "efficient" school system. *See Chapman,* 839 S.W.2d at 242; *Rose,* 790 S.W.2d at 186. Moreover, the legislature provided the

board with indirect responsibility to influence personnel matters, because the board still retains the power to appoint the superintendent who is directly responsible for personnel decisions. *Chapman,* 839 S.W.2d at 242. We agree with the circuit court that KRS 160.170 and KRS 160.180(3) are not unconstitutionally overbroad.

■ Finally, Craig asserts that he was denied procedural due process when he was denied access to all witness statements and interviews prior to trial. However, as the trial court noted and Craig concedes, Office of Education Accountability records and files are confidential and not subject to the open records provisions, per KRS 7.410. Subsection (3) of this statute provides in pertinent part:

> The provisions of ... 61.878 [the open records act] or any other statute ... notwithstanding, the testimony of investigators, work products, and records of the Office of Education Accountability relating to duties and responsibilities ... shall be privileged and confidential during the course of an ongoing investigation or until authorized, released, or otherwise made public by the OEA and shall not be subject to discovery, disclosure, or production upon the order or subpoena of a court or other agency with subpoena power.

The circuit court found that Craig did not attempt to subpoena OEA records before the hearing, and that his failure to do so precluded his reliance on any due process violation. Craig maintains that a subpoena would have been futile, as the state board denied his discovery motion. We agree with the circuit court that Craig has waived this argument by failing to follow proper procedure and preserve this argument. If the trial court (here, the board) had no opportunity to rule on the question, there is no alleged error for appellate review. *Kaplon v. Chase,* Ky.App., 690 S.W.2d 761, 763 (1985).

The opinion of the Clinton Circuit Court is affirmed in all respects.

All concur.

*ORDER*

Having considered the appellees' motion to publish the opinion rendered in this matter on May 5, 1995, and having been otherwise sufficiently advised, the Court ORDERS that the motion be, and it is hereby, GRANTED. The attached page 1 which notes that the opinion has been designated for publication is ordered substituted for the corresponding page as originally rendered.

ENTERED: June 30, 1995

/s/ Martin E. Johnstone
    JUDGE, COURT OF APPEALS